UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELISA EDWARDS,<br><br>        Plaintiff,<br><br>v.<br><br>GRANITE TECHNOLOGIES, LLC and<br>SHANE HOFF,<br><br>        Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 19-cv-12330-ADB<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS
AND PLAINTIFF'S MOTION TO REMAND**

BURROUGHS, D.J.

    Elisa Edwards ("Edwards") brought this action in Massachusetts Superior Court against her previous employer, Granite Technologies, LLC ("Granite Technologies") and its Regional Vice President, Shane Hoff ("Hoff" and, with Granite Technologies, "Defendants"). [ECF No. 1-1 ("Compl." or "Complaint")]. Defendants removed the case to federal court on November 12, 2019. [ECF No. 1].

    Edwards names Hoff in three counts of the complaint including for violation of the Massachusetts Wage Act (Count V), fraud (Count VIII), and negligent infliction of emotional distress (Count IX). See [Compl.]. Currently before the Court is Defendants' Motion to Dismiss each of these claims based on fraudulent joinder, [ECF No. 5], and Plaintiff's Motion to Remand, [ECF No. 13]. For the reasons set forth below, Defendants' motion to dismiss the claims against Hoff, [ECF No. 5], is GRANTED, and the motion to remand, [ECF No. 13], is DENIED as moot.

## I.     BACKGROUND

### A.     Factual Background

For purposes of this motion, the relevant facts are drawn from the complaint, [Compl.], and viewed in the light most favorable to the plaintiff. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted). Granite Technologies is a telecommunications company that "allows companies with more than one location to consolidate their telecommunication services through a single point of contact." [ECF No. 6-1 ¶ 5]. The company is incorporated in Delaware and has its principal office in Massachusetts. [Compl. ¶ 2]. Granite Technologies employs Hoff as a Regional Vice President, [id. ¶ 3], a position involving "duties [that] are managerial in nature," [ECF No. 6-1 ¶ 7].

In May 2016, Granite Technologies hired Edwards as a Regional Account Manager for its Atlanta office. [Compl. ¶ 6]. Edwards' primary responsibility was to sell Granite Technologies' telecommunication services. [Id. ¶ 6]. In her role, Edwards was eligible for commissions from sales. See [Id. ¶ 13].

In 2016, Edwards requested permission from her immediate supervisor and Hoff to pursue business from Duke Energy, a large electric company, through her own contact. [Compl. ¶¶ 8–12]. Her request was approved, [id.], but "contrary to her compensation agreement" her supervisors informed her "that she could [either] receive no commission from the Duke Energy account or accept half of the commission," [id. ¶ 13]. On November 3, 2016, Hoff sent an email clarifying that, with regards to Duke Energy, "[another employee] own[ed] full responsibility to lead and manage the sales process along with coordinating all of the collaboration needed," but that Edwards was "expected to be involved and included in every step to contribute as well as develop skills and learn the process." [Id. ¶ 14]. He also confirmed that the commission would be "[s]plit 50/50 between [Edwards] and [the] energy team for all upfront and residual

2

commissions." [Id.]  Edwards nonetheless "remained vigilant in her pursuit of the Duke Energy account."  [Id. ¶ 15].

Although Edwards was supposed to be included in all parts of the deal, she was excluded from communications with Duke Energy, [id. ¶¶ 14–18], and then "chastised" for her lack of involvement, [id. ¶ 19].  Edwards alleges that this criticism "demonstrates the illicit goal of excluding [Edwards] from the Duke Energy account so that Granite [Technologies] could avoid its responsibility to pay her the wages that she had earned."  [Id. ¶ 19].  Further, after the deal was secured, "Edwards' superiors at Granite [Technologies] began a campaign of unfair scrutiny, imposition of disparate employment requirements, and harassment of [Edwards]."  [Id. ¶ 20].  Granite Technologies also held her to different standards than her fellow employees, including by setting higher quotas for her, telling her to arrive at her desk well before her shift began, and requiring her to make more cold calls than her peers.  [Id. ¶ 21].  When Edwards complained, Hoff responded "with a marginalization of [her] work."  See [Id. ¶ 28].

On or about April 7, 2017, the Duke Energy deal closed.  [Id. ¶ 50].  At this time, although the conditions "for payment of 50% of [u]pfront [c]ommissions to [Edwards] were satisfied," [id. ¶ 50], Edwards alleges that Granite Technologies did not pay her the commissions she was due, [id. ¶ 51].

On May 19, 2017, Granite Technologies terminated Edwards.  [Id. ¶ 30].  She "suffered severe stress and anxiety associated with the harassment she endured and from her termination from employment at Granite [Technologies]."  [Id. ¶ 36].  Edwards, who has ulcerative colitis, reported that her symptoms became more severe, such that she "required multiple extended hospitalizations and corrective surgeries," incurred considerable medical expenses, experienced pain and suffering, and was unable to work and provide for her family.  [Id. ¶¶ 37–38].

### B. Procedural Background

In October 2019, Edwards filed the instant action in Massachusetts Superior Court, alleging violation of the Massachusetts Wage Act (Count V), negligent infliction of emotional distress (Count IX), and fraud (Count VII) against both defendants, as well as a number of contract-based claims against Granite Technologies alone. [Compl.].

On November 12, 2019, Granite Technologies removed the case to federal court, [ECF No. 1 at 1], and moved to dismiss the claims against Hoff for fraudulent joinder, arguing that Edwards had failed to state a valid claim against Hoff, [ECF No. 6]. Edwards opposed the motion to dismiss, [ECF No. 9], and the Defendants replied, [ECF No. 12]. Edwards then filed a motion to remand, asking that the case be remanded to state court if the Court allows the claims against Hoff and finds that it lacks jurisdiction. [ECF No. 13].

## II. LEGAL STANDARD

When considering a motion to dismiss a party for fraudulent joinder, the Court must determine whether the party seeking removal to federal court has carried their "burden of demonstrating by clear and convincing evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.'" Surabian Realty Co. v. Cuna Mut. Grp., 245 F. Supp. 3d 297, 299 (D. Mass. 2017) (quoting Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001)). As the Defendants do not allege outright fraud, [ECF No. 6 at 1], the Court evaluates only whether Edwards has stated a claim against Hoff.

To survive a motion to dismiss for failure to state a claim, the alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "To cross the plausibility threshold a claim does not need to be

4

probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). However, "[i]n assessing a claim of fraudulent joinder, the court is not bound by the allegations in the complaint and may consider affidavits and other materials that bear on the question of whether there is a reasonable basis for joinder of a defendant." In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass. 2015).

### III.     DISCUSSION

Defendants seek to dismiss Edwards' claims only as against Hoff. For the following reasons, the motion to dismiss the claims against Hoff, [ECF No. 5], is GRANTED.

#### A.     Massachusetts Wage Act

In Count V, Edwards alleges Granite Technologies and Hoff violated the Massachusetts Wage Act (the "MWA") by denying her full wages and setting up a special commission system that required her to split the residual commissions for the Duke Energy account. [Compl. ¶¶ 52–61]. Defendants argue that Hoff cannot be held individually liable under the MWA because he does not have sufficient authority over the corporation. [ECF No. 6 at 5–6]. Edwards responds that Hoff's control over "the amount and timing of payment of [Edwards'] wages" is sufficient for liability under the MWA. [ECF No. 9 at 5].

The MWA "provides a cause of action for employees whose wages have been wrongfully withheld." Drachman v. Bos. Sci. Corp., No. 16-cv-11022, 2016 LEXIS 186283, at *14 (D. Mass. Nov. 23, 2016). Under the MWA, a cause of action can be brought against a corporation, as well as "[t]he president and treasurer of a corporation and any officers or agents having the

5

management of such corporation." Id. (quoting Mass. Gen. Laws ch. 149, § 148).  The MWA's legislative history evidences an "intent to ensure that individuals with the authority to shape the employment and financial policies of an entity be liable for obligations of that entity to its employees."  Id. at *16 (citing Cook v. Patient Edu, LLC, 989 N.E.2d 847, 852 (Mass. 2013) (finding that individual liability under the MWA extends to companies organized as LLCs)). "This expansive view of potential liability is circumscribed," however, by the requirement that the individual be able to exercise sufficient control over the employer.  See id. at *15–16.

"[M]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that that manager has the 'management' of the 'corporation' as a whole."  Wiedmann v. Bradford Group, Inc., 831 N.E.2d 304, 314 (Mass. 2005), superseded by statute on other grounds, Mass. Gen. Laws ch. 149, § 150, as recognized in Lipsitt v. Plaud, 994 N.E. 2d 777, 783 (Mass. 2013) (explaining that Wiedmann was superseded by the legislature making treble damages under the MWA mandatory).  The Massachusetts Supreme Judicial Court has held that a manager is liable under the MWA only if he "controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation."  Id.  In Wiedmann v. Bradford Group, Inc., for example, the Supreme Judicial Court found that a general manager could not be held liable under the MWA because even though

> it [was] clear that [the general manager] had a management role, that the plaintiff reported directly to him, and that he was aware of [plaintiff's] compensation package, . . . there was insufficient evidence to determine that [the general manager] directed and participated in a substantial degree in formulating the corporation's policy.

Id.  Similarly, courts in this District have dismissed complaints under the MWA against managers of retail outlets.  Patel v. 7-Eleven, Inc., 322 F. Supp. 3d 244, 249 (D. Mass. 2018) (stating that fact "that [the two individuals] were market managers and exercised extensive control" was insufficient for them to be liable under the MWA).

6

For Hoff to be held liable under the MWA, he must have had authority to oversee company policies. The Supreme Judicial Court "has recently clarified that individuals are liable only if they have accepted responsibilities over a corporation 'similar to those performed by a corporate president or treasurer.'" Id. at 248 (citing Segal v. Gentrix, LLC, 87 N.E.3d 560, 567–68 (Mass. 2017)). This analysis "is fact-intensive and context-specific." Drachman, 2016 LEXIS 186283, at *16. For example, in Drachman v. Boston Scientific Corporation, the court examined the potential liability under the MWA for a company's vice president and human resources director. Id. at *16–18. The court determined that the company's vice president could be held liable because, in addition to being vice president, she was "a member of the global compliance committee, which determined consequences when employees violated [the company's] code of conduct." Id. at *17–18. Moreover, the vice president "participated in the senior leadership team of the human resources function and contributed to global decision making concerning [company] employees, including being involved in the development of [the company's] employment policies, compensation scheme, and performance evaluation system." Id. On the other hand, the company's human resources director could not be held liable under the MWA, because, although she was involved in "managing and controlling the financial policies of her department, recommending starting salaries for new employees, leading meetings to determine employees' eligibility for and amount of their annual bonus, and managing leaves of absence," she "[did] not have the necessary involvement with and control of company policies." Id. at *18.

In the instant case, Edwards cannot state a valid claim against Hoff under the MWA because he is not "an officer or agent having the management" of Granite Telecommunications.[1] Cook, 989 N.E.2d at 852.  Although Hoff is a Regional Vice President, [ECF No. 6-1 ¶ 6], "[m]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that that manager has the 'management' of the 'corporation' as a whole," Wiedmann, 831 N.E.2d at 314.  Edwards has not alleged that Hoff has any policy-making responsibilities.  See generally [Compl.].  Hoff's authority over Edwards, to the extent that he could approve her request to pursue the Duke Energy account and establish the commission rate for the account, [Compl. ¶¶ 12, 14], do not indicate widespread authority over company policies and are not "similar to [the duties] performed by a corporate president or treasurer," Patel, 322 F. Supp. 3d at 248 (quoting Segal, 87 N.E.3d at 568).  As Defendants note, Hoff was setting policies for "a specific account," but not for the company as a whole.  [ECF No. 12 at 2 n.2].  Like the human resources director in Drachman who determined employee salaries and bonuses, Hoff's ability to control Plaintiff's compensation with regard to a specific account does not evidence "the necessary involvement with and control of company policies" to be held individually liable under the MWA.  See Drachman, 2016 LEXIS 186283, at *18.  Because Hoff cannot be held liable under the MWA, the motion to dismiss the MWA claim, [ECF No. 5], is GRANTED.

---

[1] A manager working for a corporation or LLC may be individually liable under the Massachusetts Wage Act.  Cook v. Patient Edu, LLC, 989 N.E.2d 847, 853 (Mass. 2013).  What matters is that the individual is "someone who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation."  Wiedmann, 831 N.E.2d at 314.

### B.     Fraud

Edwards alleges in Count VIII that the Defendants falsely represented that if she obtained the Duke Energy account she would be paid the commission, that she relied on this representation to her detriment, and that the Defendants' conduct demonstrated that they did not intend to make good on this representation at the time it was made.  [Compl. ¶¶ 70–72]. Defendants contend that Edwards has not stated a claim of fraud with sufficient particularity and that the claim should therefore be dismissed.  [ECF No. 6 at 6–8].

A claim for fraud must allege facts sufficient to establish "that (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and (5) damage directly resulted therefrom." Equip. & Sys. For Indus. v. Northmeadows Constr. Co., 798 N.E.2d 571, 574 (Mass. App. Ct. 2003).  Claims of fraud have a heightened pleading standard, beyond the general standard provided in Federal Rule of Civil Procedure 8: a plaintiff must allege a claim of fraud with particularity.  Fed. R. Civ. P. 9(b).[2]

"At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place." Equip. & Sys. For Indus., 798 N.E.2d at 574; see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) ("This heightened pleading standard is satisfied by an averment of

---

[2] Although the fraud claim is asserted under state law, Federal Rule of Civil Procedure 9(b) applies.  Gwyn v. Loon Mountain Corp., 350 F.3d 212, 218 (1st Cir. 2003) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)); see also Robert Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 207 n.20 (D. Mass. 2010) (applying Rule 9 of the Federal Rules of Civil Procedure and noting that, "[i]n any event, the state and federal pleading standards are virtually identical").

9

the who, what, where, and when of the allegedly false or fraudulent representation." (internal quotation marks omitted)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Still, "[a]lthough a plaintiff need not specify the circumstances or the evidence from which fraudulent intent could be inferred, the complaint must provide some factual support for the allegations of fraud." Reisman v. KPMG Peat Marwick LLP, 965 F. Supp. 165, 172 (D. Mass. 1997) (quoting Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991), superseded on other grounds, Private Sec. Litig. Reform Act, 15 U.S.C. § 78u-4(b)(2), as recognized in Greebel v. FTP Software, Inc., 194 F.3d 185, 193–94 (1st Cir. 1999) (explaining that the First Circuit's "previous strict pleading requirements under Rule 9(b) are . . . consistent with the PSLRA")).

"The general rule in Massachusetts is 'that statements promissory in nature and statements of conditions to exist in the future are not actionable.'" Nationwide Book Indus. v. A&S Booksellers, Inc., 950 F. Supp. 2d 264, 269 (D. Mass. 2013) (quoting Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 226 (D. Mass. 1990)). This rule does not apply "if at the time the defendant made the statement, he or she did not intend to carry out the promise." Id. To show that a promise was fraudulently made, a plaintiff must allege facts sufficient to demonstrate that the statement was false at the time that it was made. Iron Mountain Inc. v. Carr, No. 05-cv-10890, 2006 U.S. Dist. LEXIS 98655, at *28–30 (D. Mass. 2006) (finding that a counterclaimant's single conclusory statement to the effect that "[i]n hindsight the plaintiffs knew that [their] statements . . . were false" was insufficient to prove that the statements were made falsely (alterations in original) (internal quotation marks and citations omitted)).

In Hogan v. Eastern Enterprise/Boston Gas, for example, where another company purchased plaintiff's employer, the court considered a claim for fraudulent inducement when the

plaintiff accepted an offer for an early retirement plan after being told that his office would likely close and not offer a Social Security supplement after the purchase. 165 F. Supp. 2d 55, 58–59 (D. Mass. 2001); see Focused Impressions, Inc. v. Sourcing Group, LLC, No. 19-cv-11307, 2020 WL 1235366, at *7 (D. Mass. Mar. 13, 2020) ("In Massachusetts, '[t]he standards of common law fraud and fraudulent inducement are the same . . . .'" (quoting United States v. President & Fellow of Harvard Coll., 323 F. Supp. 2d 151, 199 (D. Mass. 2004))). After the purchase, however, the office remained open and Social Security supplements were in fact provided to employees. Hogan, 165 F. Supp. 2d at 60–61. The court nonetheless found that the plaintiff failed to allege fraudulent inducement because, inter alia, there was no allegation that the statements were false at the time that they were made. Id. at 65. For example, the complaint did not allege "that, in fact, at the time, [the purchasing company] did have the financial resources to retain much of the [original company's] workers." Id. Further, for the Social Security supplement, "[t]he allegation that later some employees received a Social Security supplement is not the equivalent of an allegation that the statement was false when made." Id.; see also Blacksmith Invs., LLC. v. Cives Steel Co., 228 F.R.D. 66, 73 (D. Mass. 2005) (finding that an "intention not to perform in the future cannot be established merely by its subsequent non-performance").

It is not clear whether the allegedly fraudulent statement at issue here is (1) that Edwards was told that she would always receive full commission or (2) that she was told that she would receive fifty percent of the commission from the Duke Energy deal. See generally [Compl.]. Either way, neither of these statements can support a claim for fraud.

First, Edwards has not sufficiently stated a claim for fraud based on a statement that she would receive one hundred percent of the commission for her work for Granite Technologies.

11

She alleges that, "contrary to her compensation agreement," she was required to split both the upfront commission and residual commission from her work on the Duke Energy deal,[3] [Compl. ¶¶ 13–14], but does not allege that she was ever promised one hundred percent of that commission, see generally [id.]. In fact, Edwards has not alleged any false or fraudulent statement regarding her commission structure. She therefore has not sufficiently stated "the who, what, where, and when" of an alleged statement as required to state a claim of fraud. Rodi, 389 F.3d at 15; see, e.g., Pluvoise v. Select Portfolio Servicing, Inc., No. 18-cv-12347, 2019 WL 1936217, at *7 (D. Mass. May 1, 2019) ("The [c]omplaint refers to 'promises' made by [the defendant] but does not identify the substance of the alleged promises. . . . [W]ithout more information in the [c]omplaint, the court can only speculate as to the specifics of what [the defendant] promised." (footnote omitted)).

Second, Edwards has failed to state a claim of fraud based on the specific fifty-fifty commission split from the Duke Energy deal that Hoff allegedly promised in an email. Although Edwards has provided the Court with the alleged promise made in the email, and therefore provided the details "of the who, what, where and when of the allegedly false or fraudulent representation," Rodi, 389 F.3d at 15, she has not alleged that the statement was false at the time it was made and therefore has not made out a viable claim of fraud, see Equip. & Sys. for Indus., Inc., 798 N.E.2d at 574. The conclusory statement that the "Defendants' conduct . . . demonstrates that the Defendants did not intend on honoring their representation at the time it was made" is insufficient. [Compl. ¶ 72]; see Iron Mountain, 2006 U.S. Dist. LEXIS 98655, at *28–30 (finding that the single conclusory statement that "[i]n hindsight the plaintiffs knew that

---

[3] Where Edwards alleges that she was not paid for "the commissions" owed [Compl. ¶ 51)], the distinction between the upfront and residual commissions is not relevant to the Court's analysis.

[their] statements . . . were false" was insufficient to demonstrate that the statements were false when made (internal quotation marks and citations omitted)). Similar to Hogan and the Social Security supplements at issue there, Hoff's later conduct, such as his criticism of Edwards for not participating in the Duke Energy deal, does not establish that the offer to split the commission was false at the time that it was made. See Hogan, 165 F. Supp. 2d at 65. Ultimately, Edwards has not pled a claim for fraud with sufficient particularity and the Defendants' motion to dismiss the fraud claim as to Hoff, [ECF No. 5], is GRANTED.

### C. Negligent Infliction of Emotional Distress

Finally, Count IX of Edwards' Complaint alleges negligent infliction of emotional distress against both Granite Technologies and Hoff. [Compl. ¶¶ 74–78]. Edwards alleges that "Defendants' actions towards [her] . . . were negligent, and directly caused her emotional distress," [id. ¶ 75], and that the emotional distress caused physical harm, [id. ¶ 77]. The Defendants argue that Edwards has not stated a claim for negligent infliction of emotional distress, and moreover, any such claim is preempted by the exclusivity provision of the Massachusetts Worker's Compensation Act (the "WCA"). [ECF No. 6 at 8–10]. Edwards contends that her injury is not preempted by the WCA because the injury arose out of a bona fide personnel decision and that her condition, ulcerative colitis, began before her employment at Granite Technologies. [ECF No. 9 at 8–10].

Under the WCA's exclusivity provision, the WCA preempts common law claims that are compensable under the WCA "unless the employee has reserved his right" to bring a common law claim. Chorosky v. Wentworth Inst. of Tech., 915 F. Supp. 446, 452 (D. Mass. 1996) (citing Mass. Gen. Laws ch. 152, § 24). "The WCA exclusivity provision stops a common law tort claim when 1) the plaintiff is an employee, 2) the plaintiff's condition is shown to be a personal

injury within the meaning of the WCA, and 3) the injury is shown to have arisen out of and in the course of employment." Luthy v. Proulx, 464 F. Supp. 2d 69, 76–77 (D. Mass 2006) (internal quotation marks omitted). The exclusivity provision is to be "construe[d] . . . broadly . . . ." See Garcia v. Garda CL New Eng., No. 15-cv-13093, 2017 U.S. Dist. LEXIS 228585, at *52 (D. Mass. Aug. 14, 2017) (quoting Andresen v. Diorio, 349 F.3d 8, 16 (1st Cir. 2003)).

Where Edwards does not allege that she reserved her rights to bring common law claims outside of the WCA, see generally [Compl.], her claim is barred if it is compensable under the WCA. Because Edwards was Granite Technologies' employee, the Court must determine whether her emotional distress is a personal injury and, if so, whether the injury arose from her employment. Luthy, 464 F. Supp. 2d at 76–77.

Claims for negligent infliction of emotional distress are considered personal injury claims under the WCA, regardless of whether they arise from bona fide personnel decisions. See O'Connor v. Jordan Hosp., No. 10-cv-11416, 2012 U.S. Dist. LEXIS 68195, at *34–35, 37 (D. Mass. May 16, 2012) (stating that "the WCA expressly excludes compensation for emotional injuries resulting from negligent infliction of emotional distress arising out of bona fide personnel actions" and therefore "[p]ersonal injuries within the meaning of and thus barred by the WCA include . . . negligent and intentional infliction of emotional distress" (internal quotation marks and citations omitted)); see also Green v. Wyman Gordon Co., 664 N.E.2d 808, 814 (Mass. 1996) ("There is no question that an action for negligent infliction of emotional distress that is *not* the result of a bona fide personnel action is barred by the exclusivity provision of the workers' compensation act.").

In O'Connor v. Jordan Hospital, the plaintiff filed suit against her employer, Jordan Hospital, her supervisor, and other individual defendants after her termination. 2012 U.S. Dist.

LEXIS 68195, at *1–2, *21–22.  The claim was dismissed because termination is a bona fide personnel action.  Id. at *38–40.  The court noted, however, that even if the termination was retaliatory in nature, and thus not a bona fide personnel action, the claim was still barred by the exclusivity provision of the WCA because the WCA covers injuries resulting from retaliation.  Id. at *37.  Similarly, in Catalano v. First Essex Sav. Bank, the court found that the plaintiff's claim, based on her coworker's "daily 'campaign' of harassment . . . of which her employer was on notice but failed to take steps to prevent," was compensable under the WCA, despite the fact that the harassment was not a bona fide personnel decision.  639 N.E.2d 1113, 1116 (Mass. App. Ct. 1994).

Although Edwards' complaint does not specify exactly which of Hoff's actions caused her emotional distress, [Compl. ¶¶ 74–78], she claims in her opposition to the motion to dismiss "that the stress and anxiety that proximately caused her condition to worsen was attributable to her 'termination from employment,'" [ECF No. 9 at 11].  Because termination is a bona fide personnel action, a claim of negligent infliction of emotional distress based on that termination is preempted by the WCA.  O'Connor, 2012 U.S. Dist. LEXIS 68195, at *38–40.  Even if Edwards based her claim on the requirement that she split her commission or Hoff's treatment of her, it is still barred by the WCA.[4]  Green, 664 N.E.2d at 814.  Either way, the claim would be considered a personal injury within the meaning of the WCA.  Catalano, 639 N.E.2d at 1116; see also

---

[4] Edwards has not alleged that Hoff was personally responsible for her being held to a different standard than her coworkers.  [Compl. ¶¶ 21, 74–78].  Even if she had, that claim would still be barred.  See Catalano v. First Essex Sav. Bank, 639 N.E.2d 1113, 1116 (Mass. App. Ct. 1994) (finding that a claim of negligent infliction of emotional distress caused by coworker's sexual harassment was barred by the WCA); O'Connor, 2012 U.S. Dist. LEXIS 68195, at *36–37 (finding that negligent infliction of emotional distress claim related to retaliatory termination would be barred by the WCA).

O'Connor, 2012 U.S. Dist. LEXIS 68195, at *37 (explaining that actions that are retaliatory in nature are also barred by the WCA).

Having determined that Edwards' claim of negligent infliction of emotional distress is an injury within the meaning of the WCA, the Court must next evaluate whether that injury arose from her employment. "[T]he key to whether the [WCA] precludes a common law right of action has always rested upon the nature of the injury for which a plaintiff seeks to recover and not the nature of the defendant's act." Catalano, 639 N.E.2d at 1116 (citing Foley v. Polaroid Corp., 413 N.E.2d 711, 716 (Mass. 1980)). "An injury arises out of the [plaintiff's] employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects." Doe v. Purity Supreme, 664 N.E.2d 815, 819 (Mass. 1996) (citing Caswell's Case, 26 N.E.2d 328, 330 (Mass. 1940)). Such injuries can include emotional injuries arising from actions like "transfer, promotion, demotion or termination." Catalano, 639 N.E.2d at 1115.

If Edwards' claim is based on her alleged distress resulting from her employment being terminated, that injury arose from her employment and is therefore preempted by the WCA. Catalano, 639 N.E.2d at 1115. Further, because the requirement that the injury "arise out of employment" is construed broadly to include "the nature, conditions, obligations, or incidents of employment," Doe, 664 N.E.2d at 819, the split commission and Hoff's treatment of Edwards at work similarly meets the requirement that the injury "arise[ ] out of the nature, conditions, obligations, or incidents of employment," id. Therefore, regardless of whether Edwards' claim is based on her termination or the forced split of commission, it arose from her employment and is consequently preempted by the WCA.

16

Edwards argues that because she had ulcerative colitis before she was terminated, the preexisting condition is not an injury that arose from her employment. First, the Court notes that this argument undermines Edwards' entire claim, as it requires her to plead that the Defendants did not cause her alleged injuries. Second, "injuries attributable in part to pre-existing conditions are compensable under the [WCA] if aggravated by a workplace accident that results in disability." Sarocco v. General Elec. Co., 879 F. Supp. 156, 160 (D. Mass. 1995) (citing In re Madden, 111 N.E. 379, 383 (Mass. 1916) ("When a pre-existing heart disease of the [employee] is accelerated to the point of disablement by the exertion and strain of the employment, not due to the character of the disease acting alone or progressing as it would in any rational work, there may be found to have been a personal injury.")). The WCA provides that "[i]f a compensable injury or disease combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment." Mass. Gen. Laws ch. 152, § 1(7A).

Even though Edwards' ulcerative colitis was diagnosed before her employment at Granite Technologies, her condition is compensable under the WCA because she alleges that her emotional distress "caused her physical harm, as by example and without limitation, her ulcerative colitis condition worsened." [Compl. ¶ 77]; see also [id. ¶¶ 36–37 (stating that her condition worsened because of her "severe stress and anxiety associated with the harassment she endured and from her termination from employment at Granite [Technologies]"). Edwards' allegations make clear that her emotional distress caused the worsening of her symptoms, and thus it is "a major but not necessarily predominant cause of disability or need for treatment."

17

Mass. Gen. Laws ch. 152, § 1(7A); see also Sarocco, 879 F. Supp. at 160.  Therefore, her condition is compensable under the WCA because the claim concerns a personal injury that arose out of her employment.  Id.  Defendants' motion to dismiss the claim as to Defendant Hoff, [ECF No. 5], is GRANTED.[5]

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss the claims as to Hoff, [ECF No. 5] is GRANTED.  Because Edwards' motion to remand only requested that the Court remand the case to state court if it found that it lacked jurisdiction, the motion, [ECF No. 13], is DENIED as moot.

**SO ORDERED.**

July 1, 2020                                    /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE

---

[5] Because the Court finds that Edwards' negligent infliction of emotional distress claim is preempted by the WCA, it need not consider whether Edwards has otherwise sufficiently stated a claim of negligent infliction of emotional distress.